### WITZEL et al. v. BUTLER BROS.

(District Court, S. D. New York. May 25, 1915.)

PATENTS ☞328—VALIDITY AND INFRINGEMENT—WIRE MATTRESS.

The Witzel reissue patent, No. 13,125 (original No. 921,494), for a wire mattress having its sides extended and turned up at right angles to form a side guard to prevent the hair mattress from spreading, claim 23, *held* valid and infringed. Claims 19, 20, 22, and 24 *held* not infringed.

In Equity. Suit by Charles J. Witzel and the Englander Spring Bed Company against Butler Bros., for infringement of reissue patent, No. 13,125 (original No. 921,494), for a spring mattress, granted June 28, 1910, to Charles J. Witzel. On final hearing. Decree for complainants on one claim, and for defendant on others.

See, also, 221 Fed. 947, 137 C. C. A. 517. Decree modified, 229 Fed. 426, —— C. C. A. ——.

C. A. Weed, of New York City (Livingston Gifford and John R. Nolan, both of New York City, of counsel), for plaintiffs.

Samuel E. Darby, of New York City (Charles Neave, of New York City, of counsel), for defendant.

LEARNED HAND, District Judge. The record presented upon this hearing does not seem to me at all different from that presented on the application for preliminary injunction. The two patents now relied on for anticipation—Hoey, 671,068, and Peters, 195,641—were both before the Circuit Court of Appeals. Indeed, the only evidence suggested as new is that Hoey's patent, or rather an adaptation of it, which is urged to be the same thing, was in fact practicable. That proof was not necessary, because, being a United States patent, it would be taken as practicable unless the contrary appeared. No substantial sales of this form of Hoey, if it be such, have been shown, hardly over 100, and the sales of the plaintiff's mattresses have been very large. I need not attribute the whole of those sales to this

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

single patent, but the fact remains that it has had a very wide acceptance; it is fair to suppose that the patented feature has lent some part of its popularity to the whole mattress.

Upon such a record I should in an ordinary case have no hesitancy in granting a final decree to follow the preliminary order which had passed the Circuit Court of Appeals. If the case was strong enough to support a preliminary injunction, it was because there was no dispute and no reasonable doubt about the plaintiff's right; a fortiori the same record would support a final decree where doubts must be answered, and not resolved against the moving party. Yet there are some expressions in the opinion which have caused me to hesitate in this instance. The question is whether the Circuit Court of Appeals did not give to the words "longitudinal tension" in claim 19, and those based upon it, the meaning "tension under springs." The plaintiff urges that this phrase was certainly not so understood in the Patent Office, where it was made the basis of an interference between Manchee and Witzel, and then abandoned by Manchee, not because inapplicable to his patent, but because anticipated by Witzel himself, among others. The examiner not having told Manchee who was the other party in interference, he did not know that he was dealing with a reissue of Witzel himself. In further proof of the meaning of the terms "longitudinal tension" and "tension," the plaintiff urges that the same examiner allowed the three Manchee claims with just those terms, where they obviously could not mean anything but the tension of the side members arising from the inherent elasticity of the metallic web itself. I should have been ready to accept this argument, and regard all the claims based upon claim 19 as infringed, especially in view of the contrast between the phrase mentioned, and that used in the earlier claims, "coiled springs" or the like, except that the Circuit Court of Appeals was certainly not of this opinion, but regarded the phrase in question as limited by the disclosure to a means for producing such tension by something independent of the native elasticity of the metallic web. Claim 23 alone omits the phrase, and I find that no other claim in suit is infringed.

However, claim 23 was held to cover the defendant's mattress verbally, and the verbal interpretation was held to control, since nothing was shown in the prior art upon that record which required any limitation. Against the possibility that a hearing might make a difference the court suggested that this verbal interpretation would yield to any prior art which might press too closely upon the verbal interpretation to allow its validity. It was therefore intimated that a prior art might be shown which would affect the result; "more light on the subject may be obtained at final hearing." The final hearing has now been had, and has not thrown any more light upon the subject, except as I have indicated, which is quite irrelevant to the result. Precisely the same references are now introduced, and they were obviously more potent before than they are now, for nothing new has been discovered about their operation. Under such circumstances it is clear that the question is not open to me as to whether I think Hoey fulfills the suggestion of a possible prior art which might require a limitation of claim 23,

or whether it constitutes invention to substitute a vertical metallic web for a single strand with vertical wires at intervals. That question having once been decided upon the motion for preliminary injunction, the matter is no longer open here; it can be raised only by way of reargument in the Circuit Court of Appeals.

An interlocutory decree will pass declaring claim 23 valid and infringed and granting an injunction, but dismissing the complaint as to all the other claims in suit for noninfringement. No costs.